```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       WESTERN DIVISION
```

UNITED STATES OF AMERICA,

    Plaintiff,                Case No. 1:13CR-00024-MRB-1

 v.                          JUDGE MICHAEL R. BARRETT

ADAM CASARES,             *HEARING MEMORANDUM IN SUPPORT*
                                   *OF MOTION TO SUPPRESS*

    Defendant.

    Now comes defendant Adam Casares, by and through counsel, submits the following as his hearing Memorandum in support of his Motion to Suppress previously filed in this case.  Said defendant hereby incorporates by this reference the law and argument set forth in his Motion to Suppress [RE #48], his Supplemental Motion to Suppress [RE #72] and the Motion to Suppress filed by defendant Marcelino Rodriguez [RE #55] as if fully rewritten herein.

    In addition, defendant Casares submits that the testimony and evidence presented at hearing of this cause support his position that all evidence, including but not limited to drugs and other information obtained as a result of a warrantless search of the camper and truck located on the property at or adjacent to 2233 Flatwood Fallen Timber Road, Lucasville, Ohio on or about January 4, 2013, and all fruits thereof, should be suppressed.

As established at the suppression hearing, certain evidence which the prosecution indicates it intends to present at trial of this cause was found at the home or property of Frederick H. Jordan III, a co-defendant in this case, at the address above mentioned. The Government alleges that defendant Casares was a renter/lessee of said property [RE #1, Indictment at Count 3] and said allegation was not controverted at the suppression hearing.  In addition, Det. Koch testified that the bedroom where defendants Casares and Marcelino were staying contained drugs and money and that said defendants were in their underwear when the officers came in their room.  [Tr. p. 89]  Det. Koch admits that Casares and Rodriguez were staying in "Room Number 9" in the residence at issue, with permission.  [Tr. pp. 40-41] Despite the foregoing, the Government contends that said defendants do not have standing to raise the issue of illegal search and seizure.

The Government's contention contradicts its own position contained in the indictment that Adam Casares and others, did "lease, rent, use or maintain any place; to wit: 2233 Flatwood Fallen Timber Road, Lucasville, Ohio", the premises upon which the truck and camper were located.  [RE #1, Indictment at Count 3]

Clearly defendant Casares had an expectation of privacy in the residence in which he was found and upon the premises upon which the residence was located.  Not only was he a lessee of same, but at minimum, as relates to the suppression motion, he was an overnight resident with dominion over his home, such that he has standing to challenge the search.  See, *Rakas v. Illinois*, 439 U.S. 128 (1978).

Although the Government obtained a search warrant for the search, the search warrant was obtained *after* the warrantless search of a camper and truck located on or near the premises.

At hearing of this case, both Detective Koch and Detective Giles testified that Confidential Informant Kevin Huff was working for them and was their agent at the time of the forced entry into the camper and truck. [Tr. pp. 7, 15-16, 44, 80, 111, 152-153, 155] In fact, Det. Giles referred to said break-in by Huff as a "burglary" [Tr. pp. 113] and Det. Koch admitted, in reference to same, that "a theft is a theft". [Tr. p. 62] Despite the foregoing, neither CI Huff nor CI Rusty Ruggles who assisted Huff in the robbery were charged with same. [Tr. pp. 41, 44-45, 126, 152]

The law enforcement officers involved caused an informant to be "wired", knew that Huff and Ruggles were going to commit a burglary, and allowed them to do so. [Tr. pp. 47, 93-96, 112-113, 148-150] Indeed, the break-in was a "controlled robbery" conducted in the same manner as a "controlled buy". [Tr. pp. 16-17, 64-65, 93-94] This is confirmed by the fact that the officers had controlled telephone calls between Huff and Ruggles [Tr. pp. 13, 20-21, 64-65, 147], wired CI Huff with three microphones [Tr. pp. 15, 21, 64-65, 147], followed Huff when he left their office to pick up Ruggles [Tr. pp. 21, 25, 64-65, 94-95, 159-160] and sent other officers out to the Jordan house beforehand to set up surveillance. [Tr. pp. 21-23, 64-65] Officers then observed and permitted Huff and Ruggles to break into the property with a crowbar and remove marijuana. [Tr. pp. 14-15, 66, 95-96] Huff and

3

Ruggles also confirmed that the entry into the camper was a "break-in" and that they took criminal tools with them, with the officer's knowledge, to facilitate the burglary. [Tr. pp. 122-123 125, 127-131, 134, 138-139, 145-146]

In addition, the officers pre-planned to stop the truck after the break-in to get the drugs. [Tr. p. 26] They testified that the stop of the truck was supposed to be a traffic stop, despite the fact that Det. Giles also testified that there was no traffic violation to support the stop of the truck. [Tr. pp. 96, 125-126] Clearly there was therefore no probable cause to stop the truck.

Det. Koch testified that law enforcement had intelligence about the drugs; however none came from anyone with personal knowledge and the intelligence was not enough for probable cause to get a search warrant. [Tr. p. 51] The officers undisputedly used the drugs obtained from the illegal search by Huff and Ruggles during the robbery as a basis for obtaining the search warrant subsequently obtained, as they had no other evidence to establish probable cause for the warrant. [Tr. pp. 27, 29-30, 39-40, 97, 105, 113-115]

As confirmed at hearing of this cause, the informant, Huff, was acting as an arm of the police, under the direction and supervision of law enforcement and with permission of law enforcement officials. In fact, he testified that he had helped the police many times before but had never before broken into a place for them. [Tr. pp. 164-165] Ruggles also testified that Huff performed 90% of the break-in (a fact to which Huff agreed) was working for the Task Force so that they would help him out of the

4

trouble he was in from his involvement in criminal pain clinic activity. [Tr. pp. 133, 142-143, 154-155, 161] Ruggles is serving in excess of 20 years imprisonment and claims he received no help from the Task Force despite his assistance. [Tr. p. 144]

The detectives claimed that they did not know who the camper belonged to. They did know, however, that defendant Casares was from Texas and the camper had Texas plates. [Tr. pp. 67, 69, 131] And Mr. Huff testified undisputedly that he knew the truck belonged to Adam Casares [Tr. p. 158] After the truck stop Det. Giles took the drugs and called Det. Koch and informed him that he had the drugs so Koch could proceed with obtaining the warrant.

In sum, law enforcement officials who admittedly had no probable cause to obtain a search warrant related to this case [Tr. pp. 24, 109] participated in the commission of a felony burglary and utilized the fruits of that burglary to circumvent the lack of probable cause so that they could obtain a search warrant. This fact was candidly admitted by Det. Giles. [Tr. p. 118] Further, Det. Koch admitted that he did not believe that the judge issuing the warrant was made aware of the forced entry into the camper. [Tr. pp. 47-49] This type of illegal activity invalidates a search warrant in the same manner that an unlawful arrest invalidates a confession. See, *Brown v. Illinois*, 422 U.S. 590 (1975)

Indeed, at hearing of this cause both Detective Giles and Detective Koch testified that, prior to the incident complained of herein, they had never before in their careers had a confidential informant break into a place to obtain drugs [Tr. pp. 62, 118-119]; therefore, such procedure is not only illegal, but must be presumed

to be contrary to established law enforcement procedures.

This type of activity cannot be condoned by this Court. The unlawful activity of the police officers simply cannot be utilized to support probable cause for a search warrant without violating the Fourth Amendment. Use of proceeds of a burglary planned by law enforcement officials clearly infringes on the Fourth Amendment interests of the defendant which the Fourth Amendment was designed to protect; therefore, a warrant issued based upon the fruits of the burglary is invalid. See, *Rakas v. Illinois*, 439 U.S. 128 (1978)

Defendant Casares clearly has standing to object to the illegal search and burglary, as the "marijuana and cash from Mr. Casares" was allegedly his property, found on the premises of the home in which he was residing, according to Det. Koch. [Tr. p. 11] Indeed, it was the Government's position that defendant Casares had resided at the residence in question from at least December 30, 2012 until January 4, 2013 when the break-in and searches occurred. [Tr. p. 79]

The facts of this case support a finding that defendant Casares had a right to exclude others from the premises and was undisputedly on the property with permission, thus he had a reasonable expectation of privacy and has standing herein. [Tr. p. 72] See, *Jones v. United States*, 362 U.S. 257 (1960)[The "automatic standing" found in *Jones* is no longer recognized, but the result in *Jones* stands because the facts established expectation of privacy.]; *United States v. Jeffers*, 342 U.S. 48 (1951) [standing found where issue was raised by defendant as to a

6

room rented by his aunt to which he had a key and permission to store items]; *Mancusi v. DeForte*, 392 U.S. 364 (1968) [standing found even though defendant had no reasonable expectation of absolute privacy in office he shared with others, but he could reasonably expect only to be intruded on by other occupants and not by the police]

Suppression of all evidence seized from the camper, truck and residence/premises is required in this case in order to send a message to law enforcement officials that they cannot become accessories to crimes, even if the fruits of the crimes may result in probable cause for a search warrant. If the searches and seizures in this case are upheld, law enforcement officials will be free to invade the privacy of citizens by hiring agents, calling them informants, and allowing them to break into homes and property under the long arm of the law, and then utilize the "fruits of the poisonous tree" to obtain search warrants which would otherwise be unavailable. This activity cannot be condoned by this Court.

Accordingly, based upon the facts and circumstances of this case and applicable law, along with the testimony and evidence which was adduced at hearing, it is clear that all evidence seized in this case from the camper, truck and house was not lawfully seized and must be suppressed, along with all fruits thereof.

>Respectfully submitted,
>
>*/s/James H. Banks*
>James H. Banks 0031958
>Counsel for Defendant Adam Casares
>P.O. Box 40
>Dublin, Ohio 43017
>Tel. (614) 866-0666
>Fax. (740) 362-1886
>Email:  Najjarbank@aol.com

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on December 2, 2013 a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

>*/s/James H. Banks*
>James H. Banks 0031958

8